# UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

_____

|  |  |  |
|---|---|---|
| *In re*: | ) | Case No. 08-50805-FJS |
|  | ) |  |
| Mykal S. Ryan | ) |  |
|  | ) |  |
| *Debtor.* | ) |  |
| _____) | ) |  |
|  | ) |  |
| W. Clarkson McDow, Jr. | ) | APN 09-05029-FJS |
| United States Trustee, Region Four | ) |  |
|  | ) |  |
| *Plaintiff,* | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| Mykal S. Ryan | ) |  |
|  | ) |  |
| *Defendant.* | ) | Chapter 7 |
| _____) |  |  |

## MEMORANDUM OPINION

This matter comes before the Court on the United States Trustee's Motion for Default

Judgment.  The Court has subject-matter jurisdiction over this proceeding pursuant to 28 U.S.C.

§§ 1334(b) and 157(a) and the General Order of Reference from the United States District Court

for the Eastern District of Virginia dated August 15, 1984.  This is a core proceeding pursuant to

28 U.S.C. § 157(b)(2)(J).  Venue is proper pursuant to 28 U.S.C. § 1409(a).  The Court makes

the following findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules

of Bankruptcy Procedure.  Fed. R. Bankr. P. 7052.  The Court finds that Defendant is in default,

and, therefore, the Court will enter a Default Judgment against Defendant, denying Defendant's

discharge.

1

# I. BACKGROUND

The Court has presided over Mykal S. Ryan's (the "Defendant", "Debtor", or "Ryan")

Chapter 7 Bankruptcy Case (the "Bankruptcy Case") for approximately three years.  In that time,

743 entries have been filed in the Bankruptcy Case.  The Bankruptcy Case has spawned four

adversary proceedings, including the instant matter.[1]  While a comprehensive history is not

necessary, the Court will present a brief summary of the circumstances surrounding Defendant's

Chapter 7 case and this Adversary Proceeding.

## A. Defendant Filed Chapter 7 Relief Seeking His Release From Jail

On July 16, 2008, Defendant filed a voluntary petition for relief pursuant to Chapter 7 of

Title 11 of the United States Code (the "Code").  (Case No. 08-50805-FJS, Doc. No. 1.)  Prior to

the petition date, Defendant was the defendant in a civil case pending the Circuit Court for York

County, Virginia, styled *Timothy Hyden, Trustee v. Mykal S. Ryan, et al.*, Case No.

CL08001605-00 (the "State Court Proceedings").  The Honorable N. Prentis Smiley, Jr. presided

over the State Court Proceedings.  (Case No. 08-50805-FJS, Doc. No. 7.)  Judge Smiley

appointed Lee Quick, Esquire ("Quick") as Special Commissioner to levy and realize profits on

Defendant's personal and real property, in order to satisfy three foreign judgments, which had

each been domesticated in the Commonwealth of Virginia.[2]  Quick served on Defendant debtor's

---

[1] *Tymoth M. Hyden v. Mykal S. Ryan*, filed October 13, 2008, APN 08-05021-FJS; *Helen E. Ryan & John J. Ryan, Jr. v. David R. Ruby, Esq.*, filed March 6, 2009, case dismissed May 29, 2009, APN 09-05007-FJS; *David R. Ruby, Esq. v. Helen R. Ryan & John J. Ryan, Jr.*, filed July 15, 2010, APN 10-05026-FJS; and the instant matter.

[2] According to the Debtor's Statement of Financial Affairs, those judgments are: (1) *John & Christy Ryan Family Trust v. Mykal S. Ryan*, civil judgment entered by the Maricopa County Superior Court of Arizona on November 27, 2008 for $56,431.89; (2) *John & Christy Ryan Family Trust v. Mykal S. Ryan*, civil judgment entered by Pleasonton Branch, County of Alameda Superior Court of California on April 7, 2008 for $939,508.47; and (3) *Timothy Hyden, Trustee for the John & Christy Ryan Family Trust v. Mykal S. Ryan*, civil judgment entered by Pleasonton Branch, County of Alameda Superior Court of California on August 13, 2007 for $92,256.34.  (Case No. 08-50805-FJS, Doc. No. 42, at 20.)

interrogatories to which Defendant did not respond.  Judge Smiley found Defendant in contempt

of court for his failure to respond to the debtor's interrogatories and ordered Defendant to be

incarcerated in late June 2008.

At the time of filing the petition, Timothy V. Anderson, Esquire ("Anderson")

represented Defendant in the Bankruptcy Case.  On July 17, 2008, Defendant filed a Motion for

Emergency Removal of State Court Proceedings (the "Emergency Motion").  (Case No. 08-

50805-FJS, Doc. No. 7.)  The Emergency Motion stated that Defendant faced three foreign

judgments that were recorded and domesticated in the Circuit Court for the County of York,

Virginia.  The Emergency Motion and the attendant hearings make it clear that Defendant sought

the protection of the Court and the automatic stay pursuant to 11 U.S.C. § 362(a) with the goal of

Defendant's release from jail.[3]

On July 18, 2008, the Court granted Defendant's request for an expedited hearing on the

Emergency Motion.  (Case No. 08-50805-FJS, Doc. No. 11.)  At the hearing, the Court requested

that Mr. Anderson advise Judge Smiley of the Court's hearing, and the Court ordered that Quick

take no action to collect on the judgments against Defendant.  (Case No. 08-50805-FJS, Doc.

Nos. 11, 22.)  The Court continued that matter until July 25, 2008 to afford Judge Smiley the

opportunity to enforce the provisions of his orders or to release the Debtor.  (Case No. 08-50805-

---

[3] The Emergency Motion states:

> That the Debtor filed a Chapter 7 bankruptcy petition with the Court on July 16, 2008.  By filing
> the petition 11 USC 362(a) applies to all collection efforts.  Further, the automatic stay divests the
> Circuit Court of York County from continuing its collection efforts against the debtor, including
> holding him in civil contempt for failing to comply with debtors interrogatories . . . .  York County
> Circuit Court has no jurisdiction to continue the contempt powers for failing to answer
> interrogatories by virtue of 11 USC 362, thus the detention of the debtor is illegal and this Court
> has the power pursuant to 11 USC 105 to order the removal of all proceedings pending in the
> Circuit Court for York County and to order the immediate release of the debtor from the Virginia
> Peninsula Regional Jail.

(Case No. 08-50805-FJS, Doc. No. 7, at 7-8.)

FJS, Doc. No. 22, at 15:19-23.)  Subsequently, Judge Smiley ordered the release of Defendant

from his incarceration, and the Court cancelled the July 25, 2008 hearing on the Emergency

Motion, as it was moot by Defendant's release.

On September 9, 2008, Mr. Anderson filed a "Motion to Withdraw as Counsel".  (Case

No. 08-50805-FJS, Doc. No. 54.)  Mr. Anderson stated that "the Debtor directed counsel to

withdraw as counsel.  That [sic] as a result of that direction, irreconcilable differences exist

between counsel and the debtor that cannot be resolved."  (Case No. 08-50805-FJS, Doc. No.

54.)  On October 16, 2008, Defendant, via electronic mail, instructed Mr. Anderson to inform the

Court that Defendant wanted to represent himself, effective October 21, 2008.  (Case No. 08-

50805-FJS, Doc. No. 65.)  On October 30, 2008, the Court approved the Motion to Withdraw

Counsel.  (Case No. 08-50805-FJS, Doc. No. 73.)  Defendant has since proceeded *pro se*.

## B. Defendant Fled The Jurisdiction Of Virginia

On July 17, 2008, the Court scheduled for August 18, 2008 the § 341 Meeting of

Creditors in the Bankruptcy Case.  (Case No. 08-50805-FJS, Doc. No. 4.)  On August 11, 2008,

Defendant filed in his bankruptcy case the requisite Schedules and Statement of Financial Affairs

(collectively, the "Schedules").  (Case No. 08-50805-FJS, Doc. No. 42.)  Defendant "declare[d]

under penalty of perjury that [he has] read the answers contained in the [] statement of financial

affairs and any attachments thereto and that they are true and correct."  (Case No. 08-50805-FJS,

Doc. No. 42, at 26.)  *See also* Fed. R. Bankr. P. 1008 ("All petitions, lists, schedules, statements

and amendments thereto shall be verified or contain an unsworn declaration as provided in 28

U.S.C. § 1746.").

Defendant's permanent residence has been a contentious subject throughout the

Bankruptcy Case, and to best understand that, the Court presents Defendant's initial statements

4

as to his permanent address.  On his voluntary petition, under penalty of perjury,[4] Defendant

stated that he resided at 104 N. Joshuas Way, Yorktown, Virginia, 23692.  (Case No. 08-50805-

FJS, Doc. No. 1, at 1.)  Defendant indicated that he had "been domiciled or has had a residence,

principal place of business, or principal assets in this District for 180 days immediately

preceding the date of this petition or for a longer part of such 180 days than in any other

District."  (Case No. 08-50805-FJS, Doc. No. 1, at 2.)

On Schedule A, Defendant indicated that he held a fee simple interest in real property

located at 104 N. Joshua's Way, Yorktown, Virginia, 23692.  (Case No. 08-50805-FJS, Doc. No.

42, at 3.)  On Schedule C, Defendant claimed as exempt per § 34-4 of the Code of Virginia his

interest in real property located at 104 N. Joshua's Way, Yorktown, Virginia, 23692.  (Case No.

08-50805-FJS, Doc. No. 42, at 11.)  On Schedule D, Defendant listed creditors holding an

interest or judgment lien on real property located at 104 N. Joshua's Way, Yorktown, Virginia,

23692.  (Case No. 08-50805-FJS, Doc. No. 42, at 12.)  Defendant responded to Question No. 15

on the Statement of Financial Affairs—"Prior address of Debtor"—that he had a prior address of

5253 Canning Place, San Diego, California, 92111 from "2006 – present."  (Case No. 08-50805-

FJS, Doc. No. 42, at 23.)

On October 17, 2008, W. Clarkson McDow, Jr., the United States Trustee for Region

Four ("Plaintiff" or the "United States Trustee") filed a Motion to Extend Time to File a Motion

to Dismiss and a Complaint Objecting to Discharge[5] (the "Motion to Extend Time").  (Case No.

---

[4] On page 3 of the voluntary petition, Defendant affixed his electronic signature that he "declare[d] under penalty of perjury that the information provided in this petition is true and correct."  (Case No. 08-50805-FJS, Doc. No. 1, at 3.)

[5] The preliminary deadline to file complaints objecting to the Debtor's discharge or objecting to the dischargeability of certain dates was set as October 17, 2008.  (Case No. 08-50805-FJS, Doc. No. 4.)  On November 21, 2008, the Court held a hearing on the Motion to Extend Time, at which a representative on behalf of the United States Trustee and the Chapter 7 Trustee were present, but the Debtor was not present.  (Case No. 08-50805-FJS, Doc. No. 81.)  On

08-50805-FJS, Doc. No. 64.)  Plaintiff stated that Defendant had informed the Chapter 7

Trustee—David R. Ruby, Esquire—and Plaintiff that Defendant had moved to California.  (Case

No. 08-50805-FJS, Doc. No. 64.)  In the Motion to Extend Time, Plaintiff alleged that Defendant

committed fraud pre-petition and may have been concealing estate property post-petition.  (Case

No. 08-50805-FJS, Doc. No. 64.)  On October 24, 2008, the Court held a hearing at which

Kenneth F. Whitehurst, III, Esquire ("Whitehurst"), trial attorney for the Office of the United

States Trustee, advised the Court that Defendant had moved to California.  (Case No. 08-50805-

FJS, Doc. No. 69.)

On November 5, 2008 and November 7, 2008, Defendant sent letters to the Court from an

address of 5253 Canning Place, San Diego, California, 92111 regarding (1) the return of retainer

funds held in trust by Mr. Anderson; and (2) alleged misconduct on the part of Mr. Anderson.

(Case No. 08-50805-FJS, Doc. Nos. 78, 79.)  On January 2, 2009, Defendant filed a "Motion to

File Mykal S. Ryan's California Residence Information."  (Case No. 08-50805-FJS, Doc. No.

137.)  In that motion, Defendant states that he has been a resident of California since June 2005;

that he does not reside in Virginia; that his current and permanent address is in San Diego,

California; and he provides telephone number with a San Diego area code.

Later, on May 14, 2010, Defendant filed a "Declaration of Mykal S. Ryan" (the "May

2010 Declaration") in which he declared that his street address, as listed, on the Petition was

incorrect.  (Case No. 08-50805-FJS, Doc. No. 618.)  In the May 2010 Declaration, Defendant

---

December 2, 2008, the Court entered an Order extending the time to object to the Debtor's discharge to December
19, 2008.  (Case No. 08-50805-FJS, Doc. No. 87.)  On December 19, 2008, Plaintiff again moved for an extension
of time to object to the Debtor's discharge.  (Case No. 08-50805-FJS, Doc. No. 107.)  On February 5, 2009, the
Court entered an Order extending the time to object to the Debtor's discharge to July 15, 2009.  (Case No. 08-
50805-FJS, Doc. No. 145.)  On July 15, 2009, Plaintiff commenced the instant adversary proceeding against
Defendant.  (Case No. 08-50805-FJS, Doc. No. 246.)  Therefore, Plaintiff's Complaint is filed timely.

states that the address of 104 N. Joshua's Way, Yorktown, Virginia, 23692 is to be deleted and

replaced with the address of 5253 Canning Place, San Diego, California, 92111.  Further,

Defendant declared that his true domicile and residence was 5253 Canning Place, San Diego,

California, 92111 as of 180 days prior to the filing of the Petition and had been so since April

2007.  (Case No. 08-50805-FJS, Doc. No. 618, at 1.)  Lastly, Defendant declared that Schedule

A, Real Property, should reflect a value of $20,000.00, not $365,000.00, and that Schedule B,

Personal Property, should reflect a value of $0.00 (zero dollars), not $387,145.00.  (Case No. 08-

50805-FJS, Doc. No. 618, at 2.)

Defendant's assertions in the May 2010 Declaration contravene his earlier statements, as

described above.  Under penalty of perjury, at the commencement of the Chapter 7 Case,

Defendant stated that he resided at 104 N. Joshuas Way, Yorktown, Virginia, 23692 and had

been domiciled in this District for 180 days prior to the petition date.  (Case No. 08-50805-FJS,

Doc. No. 1, at 1-2.)

### C. Defendant Repeatedly Failed To Appear At His § 341 Hearings

On August 18, 2008, Defendant failed to appear at his scheduled § 341 Meeting of

Creditors.  The United States Trustee certified Defendant's absence.  (Case No. 08-50805-FJS,

Doc. No. 46.)  On September 4, 2008, the Court issued a Notice to Show Cause due to

Defendant's failure to appear at the § 341 Meeting of Creditors.  (Case No. 08-50805-FJS, Doc.

Nos. 51, 53.)  As described above, Defendant had fled the jurisdiction of Virginia on or before

September 4, 2008.  On October 24, 2008, the Court held a hearing on the Notice to Show

Cause, at which Defendant failed to appear, and Mr. Whitehurst advised that Defendant moved

to California.  (Case No. 08-50805-FJS, Doc. No. 69.)

On February 5, 2009, the Court entered an Order that, among other provisions, ordered

Defendant to appear in person for a meeting of creditors pursuant to 11 U.S.C. § 341 on a date

between June 15, 2009 and July 15, 2009.  (Case No. 08-50805-FJS, Doc. No. 145, at 2.)  This

time frame was specifically agreed to by Defendant at a hearing convened on January 27, 2009.

(Case No. 08-50805-FJS, Doc. No. 140.)  The Court allowed for the specific date to be suggested

by the Chapter 7 Trustee.  On April 9, 2009, the Court rescheduled the § 341 Meeting of

Creditors for July 15, 2009.  (Case No. 08-50805-FJS, Doc. No. 196.)

On June 22, 2009, Defendant filed a "Motion to Cancel 341 Meeting" (the "Motion to

Cancel").  (Case No. 08-50805-FJS, Doc. No. 207.)  Defendant cited disabilities due to post

traumatic stress disorder, as allegedly diagnosed by psychiatrists on behalf of the Department of

Veterans' Affairs, as cause for cancellation of the § 341 Meeting of Creditors.  Further,

Defendant asserted that due to his alleged disability, as of the filing date, he did not comprehend

the nature of his bankruptcy petition.  The United States Trustee and the Chapter 7 Trustee each

filed objections to the Motion to Cancel.  (Case No. 08-50805-FJS, Doc. Nos. 210 and 215,

respectively.)  At a hearing held on June 30, 2009, the Court ordered Defendant to appear in

person in Newport News, Virginia at his § 341 Meeting of Creditors on July 15, 2009.  (Case No.

08-50805-FJS, Doc. No. 223.)  The Court entered an order to that effect on July 10, 2009.  (Case

No. 08-50805-FJS, Doc. No. 232.)  On July 15, 2009, Defendant failed to appear at his

adjourned § 341 Meeting of Creditors.  The United States Trustee certified Defendant's absence.

(Case No. 08-50805-FJS, Doc. No.  245.)

On August 20, 2009, the Court entered an Order to Show Cause as to Defendant why his

discharge should not be denied for failure to obey orders of the Court, pursuant to 11 U.S.C. §

727(a)(6).[6]  Defendant was ordered to appear in person before the Court on August 28, 2009.

(Case No. 08-50805-FJS, Doc. No. 316.)  Defendant failed to appear on August 28, 2009.  The

Court, on August 28, 2009, stated that it would enter an Order denying Defendant's discharge

due to Defendant's refusal to obey a lawful order of the Court, per § 727(a)(6)(A).  (Aug. 28,

2009 Hr'g Tr. at 3:19-4:17, Case No. 08-50805-FJS, Doc. No. 328.)  On June 15, 2010, however,

the Court convened a status hearing, at which the Court vacated its oral ruling issued on August

28, 2009 that denied Defendant's discharge.  On July 12, 2010, the Court issued an Order to that

effect due to Defendant's *pro se* status.  (Case No. 08-50805-FJS, Doc. No. 659.)  The Court

believed it to be in the interest of fairness to afford a *pro se* debtor one final opportunity to

appear at his § 341 Meeting of Creditors.  Defendant took advantage of this final opportunity and

appeared at his (adjourned) § 341 Meeting of Creditors.  Because of this, the Court denies

Plaintiff's § 727(a)(6) count.

While the Court and the parties litigated and addressed multiple issues,[7] the issue of

Defendant's § 341 Meeting of Creditors remained dormant between September 2009 and May

2010, until the Court convened a hearing on May 11, 2010.  (Case No. 08-50805-FJS, Doc. No.

615.)  At the May 11, 2010 hearing, the Court directed the Chapter 7 Trustee to make the

necessary arrangements, in concert with the Office of the United States Trustee, so that the § 341

---

[6] "(a) The court shall grant the debtor a discharge, unless -- . . . (6) the debtor has refused, in the case – (A) to obey
an lawful order of the court, other than an order to respond to a material question or to testify; . . . (C) on a ground
other than the properly invoked privilege against self-incrimination, to respond to a material question approved by
the court or to testify."  11 U.S.C. §§ 727(a)(6) (2006).

[7] While the Court and the parties did not address directly the issue of rescheduling the Debtor's § 341 Meeting of
Creditors between September 2009 and May 2011, there was hardly a lull in the Debtor's bankruptcy case.  The
Debtor filed multiple motions to dismiss the bankruptcy case.  (Case No. 08-50805-FJS, Doc. Nos. 351, 352.)  The
parties litigated motions for relief from the automatic stay.  (Case No. 08-50805-FJS, Doc. Nos. 333, 346.)  The
Debtor moved for the recusal of Judge Frank J. Santoro from presiding over the matter.  (Case No. 08-50805-FJS,
Doc. No. 426.)

Meeting of Creditors could be held in San Diego, California between July 26 and July 30, 2010.

On June 4, 2010, the Court ordered that the § 341 Meeting of Creditors would take place on July

26, 2010 in San Diego, California.  (Case No. 08-50805-FJS, Doc. Nos. 631, 648.)  On July 26,

2010, Defendant participated in his § 341 Meeting of Creditors.  (Case No. 08-50805-FJS, Doc.

No. 679.)

## II. PROCEDURAL HISTORY

### A. The Original Complaint

On July 15, 2009, Plaintiff filed his Original Complaint against Defendant (the "Original

Complaint").  (APN 09-5029-FJS, Doc. No. 1.)  The Original Complaint alleged that—pursuant

to 11 U.S.C. §§ 727(a)(5)[8] and (6)—Defendant should be denied a discharge in the Bankruptcy

Case.  (APN 09-5029-FJS, Doc. No. 1.)  Plaintiff filed a Motion for Entry of Default Judgment

on August 25, 2009 because Defendant failed to respond timely to the Complaint and the

Summons on or before August 24, 2009.  (APN 09-5029-FJS, Doc. No. 8.)

On August 27, 2009, Defendant filed an Answer to the Original Complaint, styled as a

"Motion Objecting to Complaint Objecting to Discharge of Mykal S. Ryan" (the "Answer").

(APN 09-5029-FJS, Doc. No. 9.)  Defendant responded, in general, by disagreeing with various

allegations made by Plaintiff.  Specifically, Defendant stated that he was not capable of filing a

voluntary petition due to post traumatic stress disorder, as diagnosed by psychiatrists on behalf

of the Department of Veterans' affairs.  Defendant stated that, according to the United States

Social Security Administration, he is 100% disabled due to post traumatic stress disorder.  (APN

09-5029-FJS, Doc. No. 9, ¶ 6.)  Defendant also stated that attending the August 18, 2008 § 341

---

[8] "(a) The court shall grant the debtor a discharge, unless -- . . . (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."  11 U.S.C. §§ 727(a)(5) (2006).

Meeting of Creditors in Newport News, Virginia was an undue burden on his post traumatic

stress disorder and that he, therefore, had departed the Commonwealth of Virginia.  (APN 09-

5029-FJS, Doc. No. 9, ¶¶ 11, 18.)

On August 28, 2009, the Court convened an Initial Pretrial Conference as to the Original

Complaint.  (APN 09-5029-FJS, Doc. No. 11.)  Defendant did not appear at the August 28, 2009

Initial Pretrial Conference.  The Court continued the Initial Pretrial Conference to June 15, 2010,

at which Defendant appear by telephone.  (APN 09-5029-FJS, Doc. No. 14.)  On June 15, 2010,

the Court directed Plaintiff to re-serve Defendant with the Original Complaint.  On June 17,

2010, Plaintiff filed with the Court a Certificate of Service, attesting to service of the Original

Complaint and Summons on Defendant by U.S. Mail, postage prepaid at 5253 Canning Place,

San Diego, California, 92111 and via electronic mail.  (APN 09-5029-FJS, Doc. No. 15.)  The

Court, again, continued the Pretrial Conference until September 28, 2010.  (APN 09-5029-FJS,

Doc. No. 16.)

On September 17, 2010, Plaintiff filed a Motion to Amend the Complaint (the "Motion to

Amend").  (APN 09-5029-FJS, Doc. No. 19.)  On that date, Plaintiff noticed properly its Motion

to Amend.  (APN 09-5029-FJS, Doc. No. 20.)  On September 28, 2010, the Court convened a

Pre-Trial Conference as to Plaintiff's Complaint.  (APN 09-5029-FJS, Doc. No. 24.)  Defendant

was permitted to participate via telephone and was advised of the Pre-Trial Conference, but

Defendant did not appear by phone or in person.  (APN 09-5029-FJS, Doc. No. 24.)

On October 26, 2010, the Court reconvened the Pre-Trial Conference and also conducted

a hearing on Plaintiff's Motion to Amend.  (APN 09-5029-FJS, Doc. Nos. 38, 39.)  Again,

Defendant was permitted to participate via telephone.  Defendant did not appear by phone or in

person.  Further, when the October 26, 2010 hearing began, the Courtroom Deputy Clerk dialed

the phone number provided by Defendant, and Defendant did not answer.  The Court granted the

Motion to Amend on November 5, 2010.  (APN 09-5029-FJS, Doc. No. 40.)

## B. The Amended Complaint

On November 8, 2010, Plaintiff filed his Amended Complaint (the "Amended

Complaint").  (APN 09-5029-FJS, Doc. No. 42.)  The Amended Complaint avers five counts on

which Defendant should be denied a discharge pursuant to § 727 of the Code: (1) § 727(a)(6) for

refusal to obey the lawful orders of the Court; (2) § 727(a)(5) for failure to explain satisfactorily

a loss of assets to meet liabilities; (3) § 727(a)(4)(A)[9] for a false oath or account; (4) §

727(a)(2)[10] for the transfer of property with the intent to hinder, delay or defraud; and (5) §

727(a)(3)[11] for the concealment of or failure to keep recorded financial information.  (APN 09-

5029-FJS, Doc. No. 42.)  Most notably, as to Plaintiff's §§ 727(a)(2), (a)(4), and (a)(5) counts, is

the allegation concerning funds that Defendant initially claimed he lost while gambling at a dog

track in Tijuana, Mexico but later claimed the funds were stolen from his Yorktown home by

Quick.  Defendant's willingness to revise earlier statements made under oath as to the

whereabouts or disposition of his assets—and the assets of his subsequent bankruptcy estate—

permeates the Bankruptcy Case and forms the foundation of this Adversary Proceeding.

---

[9] "(a) The court shall grant the debtor a discharge, unless -- . . . (4) the debtor knowingly and fraudulently, in or in connection with the case -- (A) made a false oath or account."  11 U.S.C. § 727(a)(4)(A) (2006).

[10] "(a) The court shall grant the debtor a discharge, unless -- . . . (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed-- (A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition."  11 U.S.C. § 727(a)(2) (2006).

[11] "(a) The court shall grant the debtor a discharge, unless -- . . . (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case."  11 U.S.C. § 727(a)(3) (2006).

To date, Defendant has failed to file a responsive pleading or motion disputing the

allegations of the Amended Complaint.  On January 3, 2011, the United States Trustee filed a

Motion for Entry of Default Judgment.  (APN 09-5029-FJS, Doc. No. 46.)  On February 25,

2011, the Court held a hearing on the Motion for Entry of Default Judgment, at which Defendant

failed to appear despite being afforded notice and the chance to appear by telephone.  (APN 09-

5029-FJS, Doc. No. 53.)

### III. FINDINGS OF FACT

### A. Service Of The Amended Complaint Is Proper

On November 8, 2010, Plaintiff filed the Amended Complaint.  (APN 09-5029-FJS, Doc.

No. 42.)  On that date, Plaintiff filed with the Court the Certificate of Service for the Amended

Complaint.  (APN 09-5029-FJS, Doc. No. 43.)  Pursuant to Federal Rule of Bankruptcy

Procedure 7001(4) a complaint objecting to the debtor's discharge is an adversary proceeding.

Fed. R. Bankr. P. 7001(4).  Rule 7004(b)(1) states that "service may be made within the United

States by first class mail postage prepaid . . . [u]pon an individual other than an infant or

incompetent, by mailing a copy of the summons and complaint to the individual's dwelling

house or usual place of abode."  Fed. R. Bankr. P. 7004(b)(1).

Plaintiff certified that the Amended Complaint was served on Defendant via U.S. Mail,

postage prepaid, addressed to Defendant at 5253 Canning Place, San Diego, California, 92111,

which is the address provided by Defendant in his January 2, 2009 "Motion to File Mykal S.

Ryan's California Residence Information" and the May 2010 Declaration  (Case No. 08-50805-

FJS, Doc. Nos. 137, 618.)  Thus, Plaintiff's service of the Amended Complaint comports with

Rule 7004(b)(1) because the Amended Complaint was served on an individual—who is not a

minor or incompetent—at his usual place of abode.

**B. Service Of The Motion For Entry of Default Judgment Is Proper**

On January 3, 2011, Plaintiff filed with the Court its Motion for Entry of Default

Judgment.  (APN 09-5029-FJS, Doc. No. 46.)  Pursuant to Federal Rule of Bankruptcy

Procedure 9014(a) the Motion for Entry of Default Judgment is a contested matter.  Fed. R.

Bankr. P. 9014(a); *see, e.g., In re Taylor*, 289 B.R. 379, 382-83 (Bankr. N.D. Ind. 2003)

(discussing default judgments in adversary proceedings and contested matters).  Pursuant to Rule

9014(b), a motion that constitutes a contested matter "shall be served in the manner provided for

service of a summons and complaint by Rule 7004."  Fed. R. Bankr. P. 9014(b).  Therefore, the

United States Trustee was required to serve Defendant with the Motion for Entry of Default

Judgment "by first class mail postage prepaid . . . [u]pon an individual other than an infant or

incompetent, by mailing a copy of the summons and complaint to the individual's dwelling

house or usual place of abode."  Fed. R. Bankr. P. 7004(b)(1).

The United States Trustee's service of the Motion for Entry of Default Judgment

comports with Rule 7004(b)(1).  The United States Trustee certified that the Motion for Entry of

Default Judgment "was mailed [January 3, 2011] to the defendant, Mykal S. Ryan, 5253 Canning

Place, San Diego, California 92111, and was served on the defendant via email to

mykalryan1@gmail.com."  (APN 09-5029-FJS, Doc. No. 46, at 2.)  On its face, this certification,

however, is deficient in light of Rule 7004(b)(1).  The certification does not state that the Motion

for Entry of Default Judgment was served on Defendant via U.S. Mail, postage prepaid, as

required by Rule 7004(b)(1).

On February 25, 2011, the Court convened a hearing on the United States Trustee's

Motion for Entry of Default Judgment.  (APN 09-5029-FJS, Doc. No. 53.)  Due to the

discrepancy noted above, the Court inquired Mr. Whitehurst whether or not the Motion for Entry

14

of Default Judgment was served on Defendant via U.S. Mail, first class, postage prepaid.  (Feb. 25, 2011 Hr'g Tr. at 3:12-13.)  Mr. Whitehurst responded in the affirmative that the Motion for Entry of Default Judgment was served in accordance with Rule 7004.  (Feb. 25, 2011 Hr'g Tr. at 3:14.)  At the hearing, the Court found as a finding of fact that the Motion for Entry of Default Judgment "was served upon the defendant at his address of record via first-class mail, postage prepaid, consistent with the Rules."  (Feb. 25, 2011 Hr'g Tr. at 3:16-19.)

### C. Defendant Has Not Responded To The Amended Complaint

The Court takes judicial notice of the docket in this Adversary Proceeding that Defendant—to date—has not filed a responsive pleading or filed a motion to dismiss the Amended Complaint.  The Court finds as a finding of fact that service of the Amended Complaint and the Motion for Entry of Default Judgment were proper.  The Court finds that Defendant received the Amended Complaint and the Motion for Entry of Default Judgment.  Defendant has not responded.  *See Blackwell v. General Dynamics Land Systems, Inc.*, No. 10-CV-110, 2010 WL 2639829, at *3 n.1 (E.D. Va. June 28, 2010) (quoting *Nguyen v. Inova Alexandria Hosp.*, No. 98-2215, 1999 WL 556446, at *3 (4th Cir. July 30, 1999) ("[I]t is presumed that service by regular mail is received within three days pursuant to Rule [6(d)] of the Federal Rules.")); *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 916 (E.D. Va. 2004) (citing Fed. R. Civ. P. 5(b)(2); Fed. R. Civ. P. 6(e)) ("[P]leadings served by mail are presumed to reach their destination within a short time of when they are sent and, thus, service is considered to be complete upon mailing.").  The Court has even taken the extraordinary measure of allowing Defendant to participate in various hearings via telephone, and Defendant has opted not to participate telephonically.  The Court granted Defendant leave to participate via telephone at the October 26, 2010 hearing on the United States Trustee's Motion to Amend, and Defendant

failed to appear telephonically.  (APN 09-5029-FJS, Doc. Nos. 38, 39.)  The Court granted

Defendant leave to participate via telephone at the February 25, 2011 hearing on the Motion for

Entry of Default Judgment, and Defendant failed to appear telephonically.  (APN 09-5029-FJS,

Doc. Nos. 53, 54.)  The Court finds as a finding of fact that Defendant has not responded, in any

fashion, to the Amended Complaint.

## IV. DISCUSSION

### A. Defendant Is In Default

Federal Rule of Bankruptcy Procedure 7055 incorporates into adversary proceedings

Rule 55 of the Federal Rules of Civil Procedure.[12]  Pursuant to Rule 55 of the Federal Rules of

Civil Procedure, the Court, upon the application of a moving party, may grant a motion for

default judgment.  Federal Rule of Bankruptcy Procedure 7015(a)(3) states that "[u]nless the

court orders otherwise, any required response to an amended pleading must be made within the

time remaining to respond to the original pleading or within 14 days after service of the amended

pleading, whichever is later."  Fed. R. Bankr. P. 7015(a)(3).  The Court did not alter or enlarge

the time in which Defendant had to respond to the Amended Complaint, and Defendant did not

move for an extension of time in which to respond.  The period of time in which Defendant had

to respond to the Original Complaint had expired, so Defendant's answer or response to the

Amended Complaint was due 14 days from November 8, 2010, on November 22, 2010, per Rule

7015(a)(3).  Defendant has not filed an answer or otherwise responded to the Amended

---

[12] "Rule 55 [] applies in adversary proceedings."  Fed. R. Bankr. P. 7055.  Rule 55(b)(2) states:

> (2) By the Court. In all other cases, the party must apply to the court for a default
> judgment . . . .  If the party against whom a default judgment is sought has appeared personally or
> by a representative, that party or its representative must be served with written notice of the
> application at least 7 days before the hearing . . . .

Fed. R. Civ. P. 55(b)(2).

Complaint on any date, much less on or before November 22, 2010. Therefore, Defendant, for having failed to respond timely to the Amended Complaint, is in default. *See Fed. Ins. Co. v. Gilson* (*In re Gilson*), 250 B.R. 226, 230-31 (Bankr. E.D. Va. 2000) (finding defendant in default after defendant failed to file responsive pleading to amended complaint but defendant had responded by answer to original complaint).[13]

### B. Plaintiff's Claims Are Meritorious

As to its §§ 727(a)(2), 727(a)(3), 727(a)(4), and 727(a)(5) counts, Plaintiff has pled a prima facie case in each instance. The facts before the Court—from the record, testimony of Defendant at his § 341 Meeting of Creditors, statements made to the Court at hearings, and the proffer of Mr. Whitehurst—demonstrate that the United States Trustee is entitled to the relief that it seeks. *See In re Taylor*, 289 B.R. at 383 (Bankr. N.D. Ind. 2003). The Court "must satisfy itself that the facts the [United States Trustee has] alleged in [its] objections constitute a legally sufficient reason for denying" Defendant's discharge. *Id.* The facts alleged by Plaintiff satisfy this burden, and the Court grants the United States Trustee the relief of denying Defendant's discharge pursuant to § 727 of the Code. As to Plaintiff's § 727(a)(6) count, the Court denies Plaintiff's § 727(a)(6) count, for the reasons stated at the February 25, 2011 hearing.

### 1. The Fourth Circuit Requires That The Underlying Claims Have Merit

Granting a default judgment is an extraordinary remedy, and, while the Court is vested with the discretion to so rule, the Fourth Circuit requires that the Court evaluate the validity of the plaintiff's underlying claims. *See, e.g., Lolatchy v. Arthur Murray, Inc.,* 816 F.2d 951, 953

---

[13] In *Gilson*, Judge Mayer, however, did not enter a default judgment in favor of the plaintiff because the amount of damages was ***not*** a sum certain, and the matter required further hearing. *Gilson*, 250 B.R. at 231 (citing Fed. R. Civ. P. 55(b); *Frame v. S-H, Inc.*, 967 F.2d 194, 204 (5th Cir. 1992); *United States v. DiMucci*, 879 F.2d 1488, 1497-98 (7th Cir. 1989).

(4th Cir. 1987); *see also Plogger v. IMC Mortgage Co., et al.* (*In re Plogger*), 240 B.R. 243, 244
(Bankr. W.D. Va. 1999) (quoting 10 *Collier on Bankruptcy* ¶ 7055.02(2)) ("Entry of default
judgment is at the discretion of the court, and '[u]pon a default, the court is generally required to
deem as true the well pleaded allegations of a complaint, but it is not required to agree that the
pleaded facts constitute a valid cause of action.'"); *see Cameron v. MTD Prods., Inc.*, No.
CIV.A.5:03-CV-75, 2004 WL 32546003, at *2, *4 (citing *United States v. Moradi*, 673 F.2d
725, 727 (4th Cir. 1982); *Cent. Operating Co. v. Util. Workers of America, AFL-CIO*, 491 F.2d
245, 252 (4th Cir. 1974)).

"The Fourth Circuit has a 'strong policy' that 'cases be decided on their merits' . . . but
default judgment may be appropriate when the adversary process has been halted because of an
essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421-22 (D. Md.
2005) (quoting *Dow v. Jones*, 232 F. Supp. 2d 491, 494 (D. Md. 2002) (citing *United States v.
Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993))).  Defendant is an unresponsive party and
has failed to file a responsive pleading to Plaintiff's Amended Complaint.

That a defendant fails to respond to a plaintiff's complaint is not sufficient to constitute
an admission as to all of the plaintiff's claims.  *See  Ryan v. Homecomings Financial Network*,
253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*,
515 F.2d 1200, 1206 (5th Cir. 1975) (internal quotations and citations omitted)).  "The court
must, therefore, determine whether the well-pleaded allegations in [the] complaint support the
relief sought in this action."  *Ryan*, 253 F.2d at 780 (internal citations omitted).

**2. The United States Trustee Presented Sufficient Evidence To Support Its Claims**

At the February 25, 2011, Mr. Whitehurst proffered sufficient proof to prove certain of
the counts seeking a denial of Defendant's discharge under § 727 of the Code.  As stated at the

18

February 25, 2011 hearing, the Court dismissed Plaintiff's § 727(a)(6) count.  (Feb. 25, 2011

Hr'g Tr. at 6:15-25.)  The Court grants Plaintiff's §§ 727(a)(2), 727(a)(3), 727(a)(4), and

727(a)(5) counts.  Therefore, Defendant shall be denied his discharge pursuant to § 727.

### a. § 727(a)(2)

Section 727(a)(2) denies the debtor a discharge if the debtor, "with intent to hinder,

delay, or defraud a creditor or an officer of the estate . . . has concealed . . . property of the

debtor, within one year before the date of filing of the petition; or [] property of the estate, after

the date of filing of the petition."  11 U.S.C. § 727(a)(2)(B); *see generally Tavenner v. Smoot*,

257 F.3d 401 (4th Cir. 2001) (affirming denial of discharge per § 727(a)(2) where debtor

transferred proceeds of a settlement in order to defraud creditors).

 Plaintiff alleges that Defendant "engaged in a series of transactions calculated to hinder,

delay, or defraud his creditors . . . less than one year prior to the filing of his bankruptcy

petition."  (Am. Compl. ¶¶ 61-62.)  Plaintiff avers that Defendant withdrew hundreds of

thousands of dollars from bank accounts in his name.  Defendant then, allegedly, opened

accounts in the name of Helen E. Ryan, Defendant's mother, to which he retained signature

authority.  Plaintiff alleges that Defendant directed that his retirement, social security, and

disability income be paid directly into an account in the name of Helen E. Ryan.  Subsequently,

"Defendant purchased at least $350,200 worth of United States Postal Money Orders between

September 4, 2007 and November 16, 2007," within one year of the July 16 petition date.  (Am.

Compl. ¶¶ 62(d).)  Plaintiff also cites the complaint filed by the Chapter 7 Trustee, which details

pre-petition transactions by Defendant.  (Am. Compl. Ex. B.)

Plaintiff's allegations are well pled and support denial of a discharge on the basis of §

727(a)(2).  "[A] plaintiff must provide grounds for entitlement to relief, which requires more

19

than labels and conclusions or a formulaic recitation of the elements of a cause of action, and the well-pleaded factual allegations must 'plausibly' support an entitlement to relief." *Sayal v. Faruque* (*In re Faruque*), APN 09-1035-SSM, 2009 WL 2211210, at *3 (Bankr. E.D. Va. July 20, 2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007); citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)). Plaintiff has alleged in its papers more than a mere recitation of the elements that comprise a § 727(a)(2) cause of action. The factual allegations stated by the United States Trustee—and those that incorporate the Chapter 7 Trustee's complaint—support denial of Defendant's discharge.

The details alleged by Plaintiff and those details alleged by the Chapter 7 Trustee that Plaintiff incorporates by reference "plausibly" support entitlement to relief. *Id.* According to those allegations, Defendant withdrew $318,000.00 from a Wachovia Account between August 28, 2007 and October 15, 2007. (Am. Compl. Ex. B. ¶ 21.) Defendant purchased $28,000.00 in United States Postal Service money orders between September 4, 2007 and September 10, 2007. (Am. Compl. Ex. B. ¶ 22(ii).) Defendant purchased $71,000.00 in United States Postal Service money orders between September 13, 2007 and September 24, 2007. (Am. Compl. Ex. B. ¶ 24(ii).) Defendant also withdrew over $200,000.00 from a second Wachovia account between September 28, 2007 and December 15, 2007. (Am. Compl. Ex. B. ¶ 25.) Defendant withdrew funds from an ING account and used the proceeds of those withdrawals to purchase over $250,000.00 in United States Postal Service money orders between September 17, 2007 and November 16, 2007. (Am. Compl. Ex. B. ¶ 26.)

Mr. Whitehurst proffered at the February 25, 2011 hearing that Defendant's prior testimony is that "the hundreds of thousands of dollars [comprised of these withdrawals and subsequent money orders] were stolen from his home." (Feb. 25, 2011 Hr'g Tr. at 12:2-6.) Mr.

20

Whitehurst proffered that Defendant liquidated his bank accounts and failed to disclose these

actions to the Court.  Further, the manner in which Defendant liquidated his accounts implies

scienter on the part of Defendant.  Frequently, Defendant withdrew money from his accounts in

sums under $10,000.00.  Then, Defendant purchased money orders in sums less than or equal to

$15,000.00.

The Court finds as a finding of fact that Defendant has **never** provided the Court, the

United States Trustee, or the Chapter 7 Trustee with a proper and reasonable accounting of the

whereabouts of these funds.  As a debtor, Defendant has a responsibility and a duty to provide

the location of these funds and their disposition.  "While the adequacy of documentation depends

on the circumstances, ***complete disclosure is required in every case***."  *Doubet, LLC v. Palermo*

(*In re Palermo*), 370 B.R. 599, 612-13 (Bankr. S.D.N.Y. 2007) (emphasis added) (citing *In re*

*Underhill*, 82 F.2d 258, 259 (2d Cir. 1936)).  Defendant has failed to fulfill that duty.

Defendant's funds became property of the bankruptcy estate pursuant to § 541 upon the filing of

the Chapter 7 petition.  11 U.S.C. § 541(a) (2006) ("The commencement of a case under section

301, 302, or 303 of this title creates an estate.  Such estate is comprised of all the following

property, wherever located and by whomever held . . . .").  Defendant has a duty to account for

the disposition of these funds but has never provided the Court with an acceptable explanation of

those funds.  The Court finds that Defendant acted with the intent to hinder, delay, and defraud

his creditors when he converted significant sums into cash.  Despite being afforded the

opportunity to explain his conduct, Defendant has refused an attempt at an explanation.  Plaintiff

has carried its burden under § 727(a)(2).  Defendant is denied a discharge on this basis.

**b. § 727(a)(3)**

Section 727(a)(3) denies the debtor a discharge if the debtor "has concealed, destroyed,

mutilated, falsified, or failed to keep or preserve any recorded information . . . from which the

debtor's financial condition or business transactions might be ascertained, unless such act or

failure to act was justified under all of the circumstances of the case."  11 U.S.C. § 727(a)(3);

*see, e.g., In re Golob*, 252 B.R. 69, 77-78 (Bankr. E.D. Va. 2000) (denying debtor's discharge

because "it has been impossible for the debtors to untangle their affairs in a way that creditors

can ascertain their financial condition and material business transactions").  *See also In re*

*Palermo*, 370 B.R. at 612-13 (stating that purpose of § 727(a)(3) "is to provide creditors and the

court with 'complete and accurate information concerning the status of the debtor's affairs and to

test the completeness of the disclosure requirement to a discharge'") (citing *Nof v. Gannon* (*In re*

*Gannon*), 173 B.R. 313, 321 (Bankr. S.D.N.Y. 1994) (quoting *Meridian Bank v. Alten*, 958 F.2d

1226, 1230 (3d. Cir. 1992))).

The same factual allegations that Plaintiff offers in support of its denial of Defendants

discharge pursuant to § 727(a)(2) support denial of a discharge on the basis of § 727(a)(3).  (Feb.

25, 2011 Hr'g Tr. at 14:11-18.)  Plaintiff alleges that "Defendant claims that all of the cash

derived from the liquidation of his accounts and investments was put into a backpack that was

stolen from his Yorktown residence.  Other than the information in the possession of chapter 7

trustee David Ruby, the Defendant has no recorded information, books, records, documents, or

papers from which his financial condition may be ascertained."  (Am. Compl. ¶¶ 100-101.)  Mr.

Whitehurst proffered at the February 25, 2011 hearing that Defendant has never offered a

plausible explanation of how the money orders were disposed.  (Feb. 25, 2011 Hr'g Tr. at 13:13-

21.)

The United States Bankruptcy Court for the Northern District of Oklahoma denied a

Chapter 7 debtor a discharge where the debtor

> [F]ailed to keep, or else has concealed, books and records from which his true
> financial position . . . could be determined.  Because of [the debtor's]
> machinations, it remains unclear to this moment just what property is or should be
> included in his bankruptcy estate, how much it is worth, and what claims it may
> be subject to.  This satisfies the requirements for denial of discharge under §
> 727(a)(3).

*Keeling v. Ozey* (*In re Ozey*), 172 B.R. 83, 91 (Bankr. N.D. Okla. 1994).  In this case, Plaintiff's

well-pled allegations support the same conclusion.  Defendant has never adduced financial

records—if records were kept—that detail how Defendant spent or otherwise transferred over

$350,000.00 in money orders.  Defendant has made general, unsubstantiated allegations that

Quick stole the money orders, or their cash equivalent.   On January 20, 2010, Defendant filed a

"Declaration of Mykal S. Ryan" (the "January 2010 Declaration").   (Case No. 08-50805-FJS,

Doc. No. 542, at 2.)  In the January 2010 Declaration, Defendant states that he is amending

answers to his Schedules, and he states that "$434,926.00 was stolen from my home at 104 North

Joshuas Way, Yorktown, Virginia, during June 20, 2008 and July 23, 2008.  The money was kept

as cash."  Defendant also states that his response to Question 8 on the Statement of Financial

Affairs should read "$434,926.00 stolen from 104 North Joshuas Way, Yorktown, Virginia,

between June 20, 2008 and July 23, 2008."  (Case No. 08-50805-FJS, Doc. No. 542, ¶¶ 4, 5.)

Previously, Defendant swore in his Statement of Financial Affairs that he had sustained

gambling losses totaling approximately $434,926.00 within the one year prepetition.[14]  (Case No.

08-50805-FJS, Doc. No. 42, at 21.)  The Court finds as a finding of fact that Defendant has not

produced any records that trace or support the disposition of his funds after his account

withdrawals.  Whether or not Defendant used the proceeds of those withdrawals to purchase

---

[14] In response to Question No. 8 on the Statement of Financial Affairs, Defendant stated (1) that he lost
approximately $235,246.00 at the Hipodromo Caliente Race Track in Tijuana, Mexico between March 2007 and
December 2007, losing $1,258.00 per day over 187 days; and (2) that he lost approximately $2,080.00 per day at the

money orders, whether those withdrawals remained in cash, or whether the proceeds were

otherwise utilized, Defendant has failed to keep information from which his financial condition

might be ascertained.  Defendants refusal to provide relevant records or evidence of his

transactions compels a denial of discharge pursuant to § 727(a)(3).

### c. § 727(a)(4)(A)

Section 727(a)(4)(A) denies the debtor a discharge if  "the debtor knowingly and

fraudulently, in or in connection with the case . . . made a false oath or account."  11 U.S.C. §

727(a)(4)(A); *see Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244, 251-52 n.19 (4th Cir. 1994)

(discussing lower courts' denial of discharge where debtor, with fraudulent intent, failed to

disclose stock ownership) (citing *In re Chalik*, 748 F.2d 616, 619 (11th Cir. 1984)).

Plaintiff alleges that Defendant has made false oaths or accounts in relation to his

domicile.  (Am. Compl. ¶¶ 42-45.)  On his voluntary petition, under penalty of perjury,

Defendant stated that he resided at 104 N. Joshuas Way, Yorktown, Virginia, 23692.  (Case No.

08-50805-FJS, Doc. No. 1, at 1, 3.)  Defendant had "been domiciled or has had a residence,

principal place of business, or principal assets in this District for 180 days immediately

preceding the date of this petition or for a longer part of such 180 days than in any other

District."  (Case No. 08-50805-FJS, Doc. No. 1, at 2.)  On May 11, 2010, Defendant told the

Court that if placed under oath Defendant would state that he never lived in Yorktown, Virginia.

(Am. Compl. ¶¶ 46-47; Case No. 08-50805-FJS, Doc. No. 615.)

In the January 2010 Declaration, Defendant had the audacity to state that "[t]here are

other errors on the Schedules and Statement of Financial Affairs that will be corrected at a later

---

Hipodromo Caliente Race Track in Tijuana, Mexico between January 2008 and June 13, 2008, losing $2,080.00 per day over 96 days.  (Case No. 08-50805-FJS, Doc. No. 42, at 21.)

date."  (Case No. 08-50805-FJS, Doc. No. 542, ¶ 6.)  As stated above, Defendant completed the

Schedules under penalty of perjury.  The Bankruptcy Code does not permit a debtor to freely

revise his schedules and statement of affairs at his convenience with statements that may

contravene earlier statements made under penalty of perjury.  Such behavior is anathema to the

Bankruptcy Code and is not tolerated by the courts.  *See Grogan v. Garner*, 498 U.S. 279 (1991)

(stating that benefit of discharge is for the "honest but unfortunate debtor").  "When schedules

and the statements of financial affairs are filed, the requirement that they be signed as 'true and

correct' under penalty of perjury mandates that they be prepared and reviewed carefully for

accuracy: more than a cursory review is required."  *In re Wilson*, 410 B.R. 295, 305 (Bankr. D.

Or. 2009) (citing *Hatton v. Spencer* (*In re Hatton*), 204 B.R. 477, 483 (E.D. Va. 1997) ("Courts .

. . have stressed that the providing of false information under oath in a bankruptcy proceeding is

not a matter to be taken lightly.")).

   In the May 2010 Declaration, Defendant—citing Federal Rule of Bankruptcy Procedure

1009—sought to amend his voluntary petition in the following ways: (1) by deleting the address

of 104 N. Joshuas Way, Yorktown, Virginia, 23692 and replacing that address with 5253

Canning Place, San Diego, California, 92111; (2) by stating that his "true domicile and

residence" for the 180 days pre-petition was 5253 Canning Place, San Diego, California, 92111,

not Yorktown, Virginia; (3) by reducing his personal property assets reported on Schedule B

from $387,145.00 to $0.00 (zero); and (4) by reducing his real property assets reported on

Schedule A from $365,000.00 to $20,000.00.  (Case No. 08-50805-FJS, Doc. No. 618, at 1-2.)

Defendant declared under penalty of perjury under the laws of the State of California that those

changes were true and correct.  (Case No. 08-50805-FJS, Doc. No. 618, at 2.)

   Plaintiff alleges that Defendant's statements in the Schedules are inaccurate and that

25

those inaccuracies were made knowingly by Defendant.  As stated above, Defendant revised his

Schedules concerning the disposition of $434,926.00—initially, Defendant lost the money

gambling in Tijuana, Mexico, but later Defendant claimed the money was stolen from his

Yorktown, Virginia residence.  Further, Defendant testified under oath that he never sustained

gambling losses at the Hippodromo Caliente Race Track in Tijuana, Mexico and that those funds

were stolen by Quick.  (Am. Compl. ¶¶ 54-55.)  Defendant made a material omission in failing to

schedule a transfer of real estate to his brother.  (Am. Compl. ¶ 58.)  Defendant knowingly failed

to list all debts owed and all creditors on his schedules.  (Am. Compl. ¶ 59.)  Finally, Defendant

knowingly failed to amend these schedules to correct these omissions, and if Defendant were to

make amendments, then those amendments would contradict directly previous statements made

under penalty of perjury.  (Am. Compl. ¶ 60.)

Plaintiff's allegations are well pled and support denial of a discharge on the basis of §

727(a)(4).  Plaintiff's allegations meet the pleading standards espoused in this District, as well as

those of the Supreme Court of the United States.  The totality of these factual allegations, the

record before the Court in the Bankruptcy Case, and the proffer by Mr. Whitehurst at the

February 25, 2011 hearing demonstrate that Defendant ignored willfully the requirement that the

Schedules be truthful and accurate.  Defendant's actions demonstrate that he is willing to change

earlier oaths and statements made under penalty of perjury to suit the necessity of the moment.

Accordingly, the Court grants the United States Trustee's Motion for Entry of Default Judgment

as to its § 727(a)(4) count.

### d. § 727(a)(5)

Section 727(a)(5) denies the debtor a discharge if "the debtor has failed to explain

satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets

26

or deficiency of assets to meet the debtor's liabilities."  11 U.S.C. § 727(a)(5); *see Farouki*, 14

F.3d at 250 n.18 (quoting *In re Martin*, 698 F.2d 883, 886 (7th Cir. 1983) ("Section 727(a)(5) . . .

gives a court broad power to decline to grant a discharge in bankruptcy where the debtor does

not adequately explain a shortage, loss, or disappearance of assets.")).

Plaintiff alleges, as stated above, that Defendant failed to account properly for

approximately $350,000.00 in United States Postal Service money orders.  (Am. Compl. ¶ 62.)

Plaintiff also alleges that Defendant, in his petition, claimed losses of approximately $434,926.00

at the Hippodromo Caliente Race Track in Tijuana, Mexico.  (Am. Compl. ¶ 54.)  Subsequently,

Defendant contends that over $400,000.00 was placed in a backpack that was left in the

Yorktown, Virginia residence and later stolen by Quick.  (Am. Compl. ¶¶ 55, 73.)  Defendant

has also failed to disclose the transfer of an interest in real property in St. Croix, U.S. Virgin

Islands to his brother.  (Am. Compl. ¶¶ 57-58.)

Plaintiff's allegations are well pled and support denial of a discharge on the basis of §

727(a)(5).  The factual allegations of Plaintiff support plausibly an entitlement to relief.

Defendant's willful and deliberate revisions to his Schedules and his contradictory testimony

show that he cannot or will not explain precisely how he disposed of over $400,000.00.  Whether

Defendant gambled the funds away in Tijuana or whether Quick absconded with the funds in a

backpack is an open question before the Court.  Defendant has yet to explain satisfactorily where

those funds went or where they are now.  Defendant has also failed to provide any reasoned

explanation as to why his recitation of the loss of the money changed so dramatically.

This behavior fits the letter of § 727(a)(5)'s preclusion of discharge.  *See, e.g., In re*

*Green*, 268 B.R. 628, 649-50 (Bankr. M.D. Fla. 2001) (denying debtors discharge on § 727(a)(5)

grounds where debtors "supplied no credible explanation for where their income went" and

"provided only vague, indefinite, or incomplete explanations for their overall loss of and lack of assets"). Defendant's explanations are vague, indefinite, and incomplete; more so, Defendant's explanations are unsubstantiated and contradicted by Defendant's own revisions. First, Defendant claimed that he incurred the losses gambling in Tijuana. Then, Defendant blamed Quick for the losses. Defendant stated, incredibly, that he left over $400,000.00 in cash in a house that he later claimed was never his permanent residence. Aside from the fact that Defendant has never provided a scintilla of evidence that Quick stole the funds, his revision of his earlier statements regarding the gambling losses negates any credibility in Defendant's answers and amendments. Between $350,000.00 and $400,000.00 has disappeared from Defendant's accounts, and Defendant has yet to provide a meaningful and plausible reason for that loss of assets. Therefore, the Court denies Defendant's discharge on the basis of § 727(a)(5).

## V. CONCLUSION

For the reasons stated above, the United States Trustee's 11 U.S.C. § 727(a)(6) count is denied. The Court finds as a finding of fact and conclusion of law that Defendant has failed to comply with 11 U.S.C. §§ 727(a)(2), 727(a)(3), 727(a)(4), and 727(a)(5). Therefore, Defendant Mykal S. Ryan shall be denied a discharge of his Chapter 7 bankruptcy case pursuant to 11 U.S.C. § 727. Lastly, this Memorandum Opinion and its accompanying Order have no impact on the state court proceedings being litigated by Mr. Ryan or in which Mr. Ryan is a defendant. Upon the final resolution and disposition of those proceedings—by either the trial court or subsequent appellate court—the amount of any of Mr. Ryan's debts adjudicated by a state court shall be debts not subject to discharge in Mr. Ryan's Chapter 7 Bankruptcy Case. A separate Order will issue.

28

The Clerk of Court is directed to serve via United States Mail, first class, postage prepaid,

a copy of this Order to: Mykal S. Ryan, 5253 Canning Place, San Diego, California, 92111; The

Office of the United States Trustee, ATTN: Kenneth N. Whitehurst, III, Esq., 200 Granby Street,

Room 625, Norfolk, Virginia, 23510; and David R. Ruby, Esq., Thompson*McMullan*, P.C., 100

Shockoe Slip, Richmond, Virginia, 23219.


DATED:

                                    FRANK J. SANTORO
                                    United States Bankruptcy Judge